IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRIAN D.,**[1]<br><br>        Plaintiff,<br><br>    v.<br><br>**COMMISSIONER SOCIAL SECURITY ADMINISTRATION**,<br><br>        Defendant. | Case No. 3:18-cv-02061-IM<br><br>**OPINION AND ORDER** |

Caitlin S. Laumaker and George J. Wall, Law Offices of George J. Wall, 825 NE 20th Ave., Suite 330, Portland, OR 97232. Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Jeffrey R. McClain, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge.**

       Brian D. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner"), denying his application for Supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Security Income ("SSI"). Because the Commissioner improperly rejected Plaintiff's symptom testimony and medical opinion evidence, the decision is reversed and remanded for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Other interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation and quotation marks omitted). But the court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see Bray*, 554 F.3d at 1225–26.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed for SSI benefits on December 18, 2015, alleging disability since January 1, 1998. AR 14; *see* AR 210–18.[2] Plaintiff was born on November 27, 1963 and has a twelfth-grade education. AR 208, 246. Before his alleged disability onset, Plaintiff served as a helicopter mechanic in the United States Marine Corps in the 1980s and performed labor and clerical work in a warehouse from 1989 to 1998. AR 253–54, 573. Plaintiff alleges medical conditions that include depression, obsessive compulsive disorder, anxiety, and attention deficit hyperactivity disorder. AR 245–48. Plaintiff's claim was denied initially on February 16, 2016 and again on reconsideration on April 21, 2016, after which Plaintiff requested a hearing. AR 136, 145, 148.

Plaintiff's hearing before Administrative Law Judge ("ALJ") Richard Geib occurred on August 29, 2017. AR 41. At the hearing, Plaintiff, through his representative, amended the alleged onset date to his protective filing date of December 18, 2015. *See* AR 47–48. On November 20, 2017, the ALJ found Plaintiff not disabled and not entitled to SSI under the Social Security Act. AR 25. In a letter dated October 3, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks review of the Commissioner's decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

---

[2] Originally, Plaintiff also applied for disability insurance benefits ("DIB"). AR 208. He withdrew his DIB application at the ALJ hearing. AR 47–48.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, he or she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment or combination of impairments "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1522(a), 416.922(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis proceeds to step three.

3. Does the claimant's severe impairment(s) "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). The RFC is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv),

    416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(1), 416.920(a)(4)(v), 416.960(c)(1). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (outlining sequential analysis).

  The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the Commissioner bears the burden of proof and must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1098, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled and entitled to disability benefits. *Tackett*, 180 F.3d at 1099. If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*

## C. The ALJ's Decision

  At the first step of the sequential analysis, the ALJ found Plaintiff had not participated in substantial gainful activity since December 18, 2015. AR 16. At step two, the ALJ found the following severe impairments: anxiety and affective disorders, attention deficit and attention deficit hyperactive disorders, and obesity. *Id*. The ALJ also noted that Plaintiff had the following non-severe impairments: heart disorder, gastro-esophageal reflux disease, enlarged prostate, methamphetamine abuse, and essential tremors. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

PAGE 5 – OPINION AND ORDER

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17–19.

After considering the evidence from Plaintiff's hearing and medical record, the ALJ found that Plaintiff had the RFC to:

> perform medium work . . . except he can perform simple, routine tasks and can have occasional, superficial contact with general public and coworkers. He can perform work involving few changes in work routine and work setting, with no automated production pace. He must avoid even moderate exposure to work hazards, such as machinery or heights.

AR 19. At step four, the ALJ found that Plaintiff did not have any past relevant work. AR 24. Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony from a vocational expert. AR 24–25. The ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff could perform. *Id.* These jobs included janitor, agricultural produce packer, and hand packager. *Id.* As a result, the ALJ found Plaintiff not disabled. AR 25.

## DISCUSSION

Plaintiff contends that the ALJ erred in the following aspects of his decision: (A) rejecting Plaintiff's subjective symptom testimony; (B) rejecting the opinions of Plaintiff's medical sources; and (C) finding that Plaintiff's impairments did not meet Listing 12.04. ECF 16 at 4. For the reasons set forth below, this Court agrees.

**A. Plaintiff's Subjective Symptom Testimony**

**1. Legal Standards**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his or her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

### 2. Analysis

At the August 2017 hearing, Plaintiff testified that he has trouble processing information and focusing, and gets confused and overwhelmed easily, particularly when facing multiple tasks. AR 53, 59, 61. Plaintiff further testified that when he is overwhelmed, his "anxiety literally just creeps up" and it requires him to remove himself immediately from the situation when it hits. AR 53; *see also* AR 644 ("I can't think. I get really anxious. I just want to go curl up somewhere."). Plaintiff also testified that his anxiety and depression cause him to fatigue easily. AR 55, 61–62. Finally, Plaintiff testified that he suffers from depression weekly, and lacks motivation during these periods of depression, as he does not "want to do anything." AR 20, 63.

In the decision, the ALJ provided several reasons for discounting Plaintiff's symptom testimony, including: (a) inconsistency with the record; (b) inconsistency with his daily living activities; (c) his expressed desire to return to work; and (d) his testimony not being grounded in

PAGE 7 – OPINION AND ORDER

"objective findings." AR 20–21. Plaintiff contends that the ALJ failed to identify clear and convincing reasons supported by substantial evidence for discounting his testimony. ECF 16 at 5–9. After careful examination, this Court finds that the ALJ's reasons for discounting Plaintiff's testimony were not clear and convincing.

### a. Inconsistency with the Record

The ALJ found that Plaintiff's subjective statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record. AR 20. Inconsistency with the medical record can be a valid reason to discount a claimant's statements about the severity of his symptoms. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Here, however, the ALJ's analysis is beset with its own internal inconsistencies. In discounting Plaintiff's subjective symptom testimony, the ALJ repeatedly cited "normal" mental status exam findings, but qualified them all with symptomatic findings. *See* AR 20 ("mental status examination . . . was unremarkable *despite diagnoses of depression and ADHD*"; "mental status examination was unremarkable *apart from a restricted and anxious affect*"; "mental status examination was still normal *apart from a depressed mood*" (emphases added)). Consistent with Plaintiff's subjective symptom testimony, the evidence in the record documented Plaintiff's depressed mood, anxiety, low energy, restricted or flat affect, and agitation. *See* AR 346 (agitated, pressured); AR 358 (anxiety); AR 362–63 (low energy); AR 386 (presented dysthymic); AR 388 (presented dysthymic with flat affect); AR 461 (depressed mood, restricted affect, low energy); AR 637 (anxious, agitated); AR 753 (agitated, flat affect, depressed mood). Thus, the evidence cited by the ALJ does not qualify as a clear and convincing reason to discredit Plaintiff's testimony.

The ALJ also found Plaintiff's subjective symptom testimony inconsistent with the record because Plaintiff reported that some prescribed medications had helped to improve his symptoms. AR 20–21. Evidence of treatment that returns a claimant to a functioning level, free from symptoms or signs of their mental disorder, can undermine a claimant's allegation of disability. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). In this case, however, the ALJ improperly singled out a few comments that Plaintiff's symptoms were helped by medication or stabilized with treatment and relied on those to reject Plaintiff's symptom testimony. *See* AR 20–21. While ALJs obviously must rely on examples to show why they are rejecting a claimant's symptom testimony, these snapshots must show a broader developmental picture to satisfy the "clear and convincing" standard. *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Here, the record reveals that, although some of his symptoms improved for brief periods, Plaintiff had ongoing mental impairments despite regular treatment and medication. AR 464 (noting in December 31, 2015 evaluation that "depression is chronic, moderate to severe, and at this point it is seen to be resistant to improvement through mental health counseling and also to psychiatric medication"); AR 476 (describing Plaintiff's symptoms as worsening over 15 years and noting Plaintiff's frustration that his functioning has decreased); AR 748 (recording Plaintiff's February 21, 2017 observation that his "depression was OK with medications but it was not over"). Given that Plaintiff continued to suffer weekly bouts of depression and severe anxiety—and the evidence that these symptoms caused Plaintiff major difficulties with functioning and responding to the stress found in a workplace, *e.g.*, AR 475—

the ALJ's rationale of inconsistency with the record is not a clear and convincing reason to reject Plaintiff's symptom testimony.

### b. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if a claimant's activities either contradict his testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. A claimant, however, need not be completely incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled." (citation omitted)); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Here, Plaintiff's daily living activities do not contradict his subjective symptoms and limitations. He shops for groceries once a week during off-peak hours when there are few people around and he takes the same route through the store. AR 457, 460, 468. As for the gym, Plaintiff set up a routine to exercise 3–4 times a week, at the encouragement of a behavioral health counselor. AR 408. He goes to the gym at 9:00 when it is not crowded, rides the stationary bike for 20 minutes and lifts weights for 10 minutes; he leaves the gym if there are too many people. AR 457–58, 468. When he is feeling more depressed, Plaintiff does not finish his gym routine or only goes two times per week. AR 468, 748. Plaintiff drives and rarely rides the bus because he does not like crowds or "people behind him." AR 457, 633, 640. These kinds of

weekly and daily tasks are precisely the activities the Ninth Circuit identified in *Vertigan* as insufficient to discount symptom testimony. 260 F.3d at 1050. Moreover, Plaintiff's activities are not inconsistent with his statements that he has difficulty staying organized, difficulty interacting with or being around strangers, and low motivation during his bouts of depression. As such, Plaintiff's daily living activities are not a clear and convincing reason to discount his subjective symptom testimony.

### c. Expressed Desire to Work

Another reason the ALJ gave for discounting Plaintiff's subjective symptom report was Plaintiff's statement that, despite his limitations, he "would love to work again." AR 21. As Defendant concedes, Plaintiff made this statement to an occupational therapist in conjunction with reciting the difficulties he faces when filling out job applications and the anxiety he has with interviews. *See* AR 634; ECF 19 at 7. As such, Plaintiff's statement cannot reasonably be construed as discrediting his symptom report; rather, Plaintiff's statements regarding returning to work support his testimony that he has trouble processing things, coupled with debilitating anxiety. *See* AR 634. Moreover, the fact that Plaintiff expressed the desire to work again does not mean that he is capable of full-time, competitive employment. In that same interview with an occupational therapist in 2016, Plaintiff was asked about the conditions limiting his ability to work. *Id.* Plaintiff stated, "I have a hard time processing. I get a lot of anxiety . . . probably performance anxiety. I wish I could figure this out. I get a sting in my body when I have the thoughts and visions. It is a little jolt. I get the shakes. I can't think. I get really anxious. I just want to go curl up somewhere." AR 634–35.

In addition, as the Ninth Circuit has long rejected penalizing claimants for attempting employment, Plaintiff's comment that he would love to work should not be used against him. *See Lingenfelter*, 504 F.3d at 1038–39 (holding that a claimant should not be punished for attempting

PAGE 11 – OPINION AND ORDER

to work). Accordingly, Plaintiff's statement that he wanted to work again did not constitute a clear and convincing reasons to discount his subjective symptom testimony.

### d. Objective evidence

One final reason the ALJ identified for disregarding Plaintiff's subjective complaints was that they were "not grounded in objective findings." AR 21. Although the ALJ may consider this factor, a lack of objective medical evidence affirmatively supporting a claimant's alleged symptom severity, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility. *See Burch*, 400 F.3d at 681. Because this Court concludes that the ALJ failed to provide any other clear and convincing reason, supported by the record, for disregarding Plaintiff's subject testimony, the lack of objective medical evidence by itself was not a proper reason to disregard Plaintiff's testimony.

## B. The ALJ's Evaluation of Medical Opinion Evidence

### 1. Legal Standards

An ALJ may reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (citing *Andrews*, 53 F.3d at 1043). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Brown*, 849 F.2d 418, 421–22 (9th Cir. 1988). Additionally, the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion, as well as the objective ones. *Id.* at 422; *Lester*, 81 F.3d at 833.

Social Security Ruling ("SSR") 06-03p, in effect at the time Plaintiff filed his claim, defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, 2006

WL 2329939, at *1 (Aug. 9, 2006).[3] Health care providers who are not "acceptable medical sources" include "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." *Id.* at *2. The ALJ can use these other medical source opinions in determining the "severity of the impairment(s) and how it affects the individual's ability to function." *Id.* To discount the testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

   2. Analysis

      a. Caleb Burns, Ph.D.

Plaintiff objects to the ALJ's decision to give little weight to the opinion of Caleb Burns, Ph.D., a licensed psychologist and Plaintiff's consultative examiner from late 2015. AR 22, 452–65. Dr. Burns opined that Plaintiff would not be employable in a competitive work environment as he will be "unable to maintain even very minimal attendance, will be unable to complete a normal workday and work week without interruptions from psychologically-based symptoms, will be unable to work with others without being distracted by them, and among other things, will be unable to maintain attention and concentration for extended periods of time." AR 464–65.

The ALJ gave several reasons for discounting Dr. Burns's opinion. First, the ALJ found Dr. Burns's opinion to be inconsistent with the "relatively unremarkable" mental status exams performed in 2015. AR 22 (citing AR 362 (October 29, 2015); AR 368 (February 18, 2015); AR 402 (August 20, 2015)). Most of the mental status exams identified by the ALJ, however,

---

[3] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR 06-03p, broadened the definition of acceptable medical sources, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered as medical opinions. *See* 82 Fed. Reg. 5,844, 5,845, 5,853 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1502, 416.902).

PAGE 13 – OPINION AND ORDER

consisted of checkbox forms on which "restricted affect," "anxious," or "depression" were marked. *See* AR 362–63 (restricted affect and anxious); AR 402 (depressed). Unlike those 2015 mental status exams, Dr. Burns's mental status exam, done in narrative form, provided a more detailed report, noting that Plaintiff appeared tired; he had variable eye contact; his hands shook noticeably; he had a slow response pace; his sentences were short and low energy; his mood was depressed to somber; he had limited facial mobility and a restricted range of affect; his memory appeared to be variable and he had difficultly retrieving events from distant memory; and his judgment was impaired by his symptoms of depression. AR 461. Thus, Dr. Burns's extensive assessment of Plaintiff's mental status is consistent with two of the three less detailed reports cited by the ALJ.[4] As such, the inconsistency the ALJ noted is neither a legitimate nor convincing reason to discount Dr. Burns's opinion. *See Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (holding that it was error under either "clear and convincing" or "specific and legitimate" standard to reject an examining psychologist's report on the grounds that it contradicted a less extensive report).

Moreover, Dr. Burns's opinion was based on more than a mental status exam. Before he prepared his opinion, Dr. Burns also interviewed Plaintiff, reviewed his medical records and treatment notes, and administered psychological tests. AR 452. Those tests included the Adaptive Behavior Assessment System-III ("ABAS-III") test on which, per Dr. Burns's notes, Plaintiff "achieved a General Adaptive Composite standard score of 67" which was "*more than two* standard deviations below the mean of same age peers in terms of adaptive functioning." AR

---

[4] This Court does not read the third mental status exam, performed by Meredith Arend, QMHP, on February 18, 2015, as contradicting Dr. Burns's more detailed mental status assessment from December of 2015. *See* AR 365–71. Though Ms. Arend's February 2015 mental status report did not identify any marked abnormalities, the fact that "symptoms wax and wane in the course of treatment" is to be expected; it does not create an inconsistency. *See Garrison*, 759 F.3d at 1017.

PAGE 14 – OPINION AND ORDER

462–63 (emphasis added). When evaluating Dr. Burns's opinion, the ALJ discredited his reliance on Plaintiff's ABAS-III test result, remarking it was "only" two deviations below the mean.[5] AR 22. This is not a legitimate reason for discounting Dr. Burns's opinion, as the ALJ misstated Dr. Burns's actual assessment of Plaintiff's test score, and scoring more than two standard deviations below the mean on an adaptive functioning test constitutes significant and informative data supporting Dr. Burns's opinion.

The next reason the ALJ gave for discounting Dr. Burns's opinion was Plaintiff's "ability to shop in stores and ride public transportation, despite his alleged aversion to crowds." AR 22. As discussed above, Plaintiff's rote grocery shopping routine done during off-peak hours and his infrequent use of the bus due to his discomfort with crowds and people standing behind him, did not constitute evidence sufficient to discredit Plaintiff's subjective symptom testimony. For the same reasons, it is not a legitimate reason supported by substantial evidence to discount the medical opinion of an examining source.

### b.  Kristin Cummings, PMHNP

Plaintiff objects to the ALJ's failure to credit the entire opinion of Kristin Cummings, a Psychiatric Mental Health Nurse Practitioner. ECF 16 at 15–16. Ms. Cummings was Plaintiff's treating provider. AR 589. The ALJ gave "great weight" to her opinion that Plaintiff is moderately limited in maintaining attention and concentration for at least two hours, working in proximity to others without being distracted, interacting with the public, and responding to expected or unexpected changes in work routine or setting. AR 22. However, the ALJ discounted her opinion that Plaintiff is moderately-to-severely limited in his ability to complete a workday

---

[5] The ALJ twice noted elsewhere in his decision that Plaintiff had a "low" ABAS-III score. AR 21–22.

and work week free from interruption from his psychologically-based symptoms and his ability to set goals and plan independently. *Id*. The ALJ found these to be inconsistent with the other providers' "relatively unremarkable mental status examinations . . . including consistent notations of average intellect." *Id*.

While the ALJ only need give germane reasons for discounting Ms. Cummings's opinion, he failed to do so here. The "relatively unremarkable" mental status exams cited by the ALJ—only two of which note "[i]ntellectual level judged to be average," AR 617, 753—are not inconsistent with Ms. Cummings's opinion, as most of these exam records reflect signs of Plaintiff's psychologically-based symptoms. *See* AR 753 (agitated, flat affect, depressed mood); AR 771 (intrusive, disturbing, and preoccupying thoughts); AR 614–17 ("struggling with intrusive negative thoughts and pictures'); AR 625–26 (intrusive thoughts "come on like storms, they keep hitting"); AR 362–63 (restricted affect, anxious).[6] Furthermore, Ms. Cummings commented on her functional report that Plaintiff has "[a] lot of anxiety when no option for frequent breaks. This symptom has interfered with [his] last 2 jobs." AR 475. Her comment was associated with her conclusion that Plaintiff has moderately severe restrictions in his ability to complete a normal workday and work week. *See id.* This comment demonstrates that her opinion was not based on Plaintiff's intellect or mental status but rather on Plaintiff's anxiety and how that psychologically-based symptom affected his past job performance. Any inconsistency with mental status reports from other providers had no bearing on Ms. Cummings's opinion. Thus, it is not a germane reason to discount her opinion.

---

[6] The two remaining mental status exams cited by the ALJ consist of one performed by Meredith Arend, QMHP, on February 18, 2015 (AR 365–71) which is discussed in n.4, *supra*, and one which was not a mental status exam, but was a primary care annual exam on April 28, 2015 where Plaintiff self-reported his mental state. AR 320.

The other reason the ALJ gave for discounting Ms. Cummings's opinion that Plaintiff suffered moderate-to-severe limitations was Plaintiff's statement that he "would love to work again." AR 22. As discussed above, Plaintiff made that comment to an occupational therapist in conjunction with his recounting the difficulties he faces when filling out job applications and the anxiety he has for interviews. *See* AR 634. As such, it did not constitute evidence sufficient to discredit Plaintiff's subjective symptom testimony. Thus, Plaintiff's statement about his desire to return to work, taken out of its context, is not a germane reason to discount Ms. Cummings's opinion.

    **c.  Meredith Arend, QMHP**

Meredith Arend is a Qualified Mental Health Provider and Plaintiff's mental health counselor and case manager; she saw Plaintiff approximately once a month beginning December of 2014. AR 471. On January 8, 2016, Ms. Arend wrote a letter assessing Plaintiff's symptoms and limitations. AR 471–72. She recounted Plaintiff's reports of fatigue, low motivation and energy, intrusive negative thoughts and social anxiety and opined that Plaintiff struggles to accomplish tasks due to distractibility, an inability to make decisions, and low motivation. *Id.*

Plaintiff concedes that Ms. Arend is not an acceptable medical source. *See* ECF 20 at 5. Therefore, a germane reason is sufficient to discount her testimony. The ALJ discounted Ms. Arend's opinion based on its inconsistency with mental status examinations that showed flat affect but normal cognition and attention. AR 23. Two of those mental status exams were completed by Ms. Arend, and they both noted that Plaintiff's attention was good and his judgment appeared intact. AR 368, 617. The inconsistency between Ms. Arend's opinion and her own exams is a germane reason for the ALJ to discount her opinion.

#### d. L. Foxes Singing, Occupational Therapist

Occupational therapist ("OT") L. Foxes Singing, who is not considered an acceptable medical source, evaluated Plaintiff on March 17, 2016. AR 637. The OT concluded that Plaintiff struggles with social interactions, relies heavily on reminders to complete daily living activities, and requires assistance and support to function. *Id.*

The ALJ gave several reasons in support of discounting the OT's testimony. AR 22–23. The ALJ noted that the OT's assessment of Plaintiff's struggles with social interactions was inconsistent with Plaintiff's testimony that he attempts to socialize every weekend. AR 22 (citing AR 644). The ALJ also cited Ms. Cummings's findings that Plaintiff is only slightly socially limited. AR 23 (citing AR 475). Although Plaintiff's testimony and Ms. Cummings's findings are only inconsistent with the OT's opinion that Plaintiff struggles with social interactions, this reason is sufficient to discount that portion of the OT's opinion. The ALJ also noted that Plaintiff's ability to maintain a gym schedule without any apparent prompting or reminders undermines the OT's opinion that Plaintiff relies heavily on reminders and support for daily activities. AR 23. This finding is a germane reason to discount the OT's testimony.

### C. Listing 12.04 and Proper Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits . . . ." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. *See id.* at 1100. A remand for an award of benefits is appropriate if the evidence is insufficient to support the Commissioner's decision and when no useful purpose would be served by further administrative proceedings or when the record has

been fully developed. *Id*. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *See Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015) (citations, alterations, and quotation marks omitted).

Because the ALJ failed to provide legally adequate reasons to reject Plaintiff's testimony and the medical opinions of Dr. Burns and Ms. Cummings, the Court concludes that the appropriate disposition is to "reverse and remand for proper consideration of the evidence or adequate justification for its exclusion." *Mattox v. Comm'r of Soc. Sec.*, 371 F. App'x 740, 742 (9th Cir. 2010). On remand, the ALJ should also determine whether Plaintiff met the requirements of Listing 12.04. *See id.*

## CONCLUSION

The Commissioner's decision is not based on proper legal standards or supported by substantial evidence. Therefore, Plaintiff's request for remand is GRANTED. The Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 30th day of March, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge